UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JEAN ELLEN GARCIA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:07-CV-276-PRC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Jean Ellen Garcia on August 22, 2007; and a Plaintiff's Opening Brief [DE 15], filed on December 19, 2007. Plaintiff requests that the Court reverse and remand the decision of the Administrative Law Judge, which denied her claim for Disability Insurance Benefits ("DIB"). Plaintiff also requests that the Court award her fees and costs incurred. On February 7, 2008, the Commissioner filed a Memorandum in Support of the Commissioner's Decision. Plaintiff failed to file a reply brief and the time to do so has passed. For the following reasons, the Court denies Plaintiff's request to reverse and remand the decision of the Administrative Law Judge.

**PROCEDURAL BACKGROUND**

On September 2, 2005, Plaintiff filed an application for DIB, alleging that she has suffered from a disability since November 1, 2004. On November 22, 2005, the Social Security Administration denied Plaintiff's application, and on March 8, 2006, denied the application upon reconsideration. On April 18, 2006, Plaintiff filed a request for a hearing, which was held on March

13, 2007, before Administrative Law Judge Denise McDuffie Martin ("the ALJ"). Plaintiff appeared and testified at the hearing, represented by counsel, Karen Szumlanski. Vocational Expert Lee Knutson ("the VE") appeared and testified at the hearing, as did Medical Expert Hector Ezike, M.D. ("the ME"), and Robert Garcia, Plaintiff's husband, who testified as a witness. In a decision dated March 26, 2007, the ALJ denied Plaintiff's application for DIB, finding that Plaintiff did not have a disability within the meaning of the Social Security Act and that she could perform jobs that exist in significant numbers in the national economy.

Plaintiff filed a Request for Review of the ALJ's decision with the Social Security Administration Appeals Council. On June 26, 2007, the Appeals Council denied Plaintiff's request, making the ALJ's decision the final decision of the Commissioner.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636 and 42 U.S.C. § 405(g).

## FACTS

### A. Background

Plaintiff was fifty-four years old at the time of the ALJ's March 26, 2007 decision. Plaintiff has a ninth-grade education. Her professional experience includes housekeeping in a hotel and working as a crossing guard for children.

### B. Medical evidence

The record reflects that in May 2002, Plaintiff injured her left arm while working as a housekeeper. Plaintiff reported that while she was cleaning a shower, she slipped and fell and

2

twisted her left arm.  On July 11, 2002, Plaintiff visited Kantilal S. Patel, M.D.  In a report dated July 25, 2002, Dr. Patel diagnosed Plaintiff with a stress fracture of the left scaphoid, the left lunate, and the ulna at the proximal end, and also diagnosed paresthesia.[1]  Dr. Patel noted that Plaintiff was working her regular duties but that she suffered from severe pain and swelling of her left arm, which caused her to work in tears at times.  Dr. Patel instructed Plaintiff to continue to wear a splint and sling during the day.

In May 2002 through September 2002, Plaintiff attended outpatient occupational therapy at St. Catherine's Hospital.

On February 14, 2003, Kenneth J. Ham, M.D., performed surgery on Plaintiff.  A report describes the surgery as an endoscopic carpal tunnel release, left wrist arthroscopy, and arthroscopic debridement of the cartilage lesions of the lunate.  The surgery findings revealed mild arthritis in Plaintiff's left wrist and hand, and a complete tear of a ligament in Plaintiff's left hand.

From April 14, 2003 through May 15, 2003, Plaintiff returned to outpatient occupational therapy at St. Catherine's Hospital.

In December 2003, James D. Ferguson, O.D., an optometrist, treated Plaintiff for early chronic open-angle glaucoma.  Dr. Ferguson reported that Plaintiff had no vision in her right eye, had 20/40 vision in her left eye, and experienced decreased visual acuity.  Regarding work restrictions, Dr. Ferguson concluded that it may be difficult for Plaintiff to handle objects but that she was not visually limited in sitting, standing, walking, lifting, carrying, hearing, speaking, and traveling.

---

[1] "Paresthesia" is defined as "[a] spontaneous abnormal usually nonpainful sensation (e.g., burning, pricking)[.]" Stedman's Medical Dictionary, 1425 (28th ed. 2006).

In a report dated December 11, 2003, Dr. Patel noted that Plaintiff suffered from headaches and left wrist pain. Dr. Patel prescribed ibuprofen. Further, in an undated report, Dr. Patel instructed Plaintiff to avoid using her left arm, splint her left wrist and forearm during the day, and use a sling to elevate the forearm. Dr. Patel indicated that Plaintiff could work with these restrictions. He also prescribed Pamelor, a tricyclic antidepressant.

A report dated March 9, 2004, provides that Plaintiff told Dr. Patel that her left forearm pain continued off and on, but that she was feeling fine. At her next visit, in a report dated August 25, 2004, Plaintiff reported that she stopped taking all medications because she could not afford them, but stated that she felt well. Dr. Patel prescribed Crestor, to reduce cholesterol; Lisinopril, an ACE inhibitor used to treat high blood pressure; and Naprosyn, a nonsteroidal anti-inflammatory drug. On August 27, 2004, in a written report, Dr. Patel prescribed Ultracet, a non-narcotic pain reliever for mild to moderate pain. He suggested that Plaintiff rest at home for a week.

Plaintiff visited Dr. Patel on December 8, 2004, and her treatment record notes that she complained of headaches, and left elbow, wrist, and hand pain. The note reflects that Plaintiff was not taking Crestor because she could not afford it. A treatment note dated April 21, 2005, indicates that Plaintiff told Dr. Patel that her left forearm pain was off and on and all activities caused pain, but she felt fine. In a treatment note dated September 29, 2005, Plaintiff again reported to Dr. Patel that she felt fine but that her left forearm and wrist were tender and she had pain in her left elbow and wrist.

On September 23, 2005, Plaintiff underwent a bone scan, which suggested that she had suffered a stress fracture in her left wrist. On November 2, 2005, Adela Perez, M.D., performed a consultative evaluation. Dr. Perez noted that Plaintiff suffered from severe tenderness in her left

4

wrist, and that her range of motion was very limited with possible minimal early atrophy. Dr. Perez reported that muscle strength in Plaintiff's legs and right arm was 5/5, but in the left arm was 5/4. Plaintiff had difficulty making a fist due to pain. Grip strength was 5/5 in the right hand and 5/3 in the left. Deep tendon reflexes were all normal. Fine-finger manipulation was normal bilaterally. Sensation was intact to both sharp and dull, bilaterally. Plaintiff could button, unbutton, open bottle caps, pick up coins, and handle a pen normally with her right hand, but it was almost impossible with her left. After interview and examination, Dr. Perez diagnosed total blindness in the right eye; well-controlled hypertension; non-insulin dependent diabetes mellitus; torn ligament in the left wrist with pain and weakness; generalized mild osteoarthritis; headaches, possibly related to vision problems; and obesity.

Whitley Bruce, a state agency physician, reviewed the medical evidence of record and issued a written report dated November 14, 2005, concluding that Plaintiff could frequently balance, stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; was capable of limited handling and manipulation; and suffered visual limitations. Dr. Bruce found Plaintiff's complaints to be fully credible. Fernando Montoya, also a state agency physician, reviewed the record evidence in March 2006, and affirmed Dr. Bruce's assessment.

Plaintiff underwent a nerve conduction study on March 9, 2006, which revealed borderline abnormalities. Plaintiff underwent an MRI of her lumbar spine on March 21, 2006, which demonstrated mild degenerative changes in the lower lumbar spine, and a bone spur, with no evidence of central neural foraminal narrowing.

**C. Plaintiff's hearing**

On March 13, 2007, the ALJ convened a hearing at which Plaintiff, who appeared with her attorney, the VE, the ME, and Plaintiff's husband testified. The ME testified that based on his review of the medical record, Plaintiff had a history of diabetes, high blood pressure, left arm pain, left elbow fracture, right wrist contusion, surgery on the left wrist and hand, carpal tunnel syndrome, fatigue, recurring headaches, obesity, and vision in only one eye. The ME testified that Plaintiff's conditions, either singly or in combination, did not meet a listed impairment. The ME concluded that Plaintiff could lift, push, and pull a maximum of ten to twenty pounds occasionally, and less than ten pounds frequently; stand and walk six hours a day; sit six hours a day; never climb ropes, scaffolds, or ladders; occasionally climb stairs and ramps; occasionally bend, stoop, crawl, and kneel; and occasionally grasp, feel, and handle with the left hand.

The VE testified next. The ALJ posed a hypothetical question to the VE, describing someone who could lift and carry ten to twenty pounds occasionally and less than ten pounds frequently; could stand and walk six hours in an eight-hour day; could sit six hours in an eight-hour day; could not climb ropes, scaffolds, or ladders; could occasionally climb stairs and ramps; could occasionally balance, bend, stoop, crouch, crawl, and kneel; needed to avoid unprotected heights and dangerous or moving machinery; and could occasionally grasp, feel, and handle with fine manipulation using the left, non-dominant arm. The VE testified that the hypothetical individual could most likely not perform Plaintiff's past work. The VE further testified that the hypothetical individual could perform light unskilled jobs such as sales and rental clerk, usher, parking lot attendant, information clerk, and light cleaner, which number approximately 57,600 jobs in the Chicago, Illinois, and Lake and Porter County, Indiana areas.

### D.  ALJ's decision

The ALJ concluded that Plaintiff suffered from the following severe impairments: obesity, non-insulin dependent diabetes, hypertension, a left arm injury status post healed ulnar fracture and left sided carpal tunnel release, low back pain due to degenerative changes at L5-S1, and bilateral glaucoma with vision in only one eye.  The ALJ found that despite her impairments, Plaintiff was not disabled within the meaning of the Social Security Act because her impairments did not equal one of the listed impairments.  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> lift and carry 10-20 pounds occasionally and less than 10 pounds frequently.  She can stand, walk and sit for six hours in a day.  She should not climb ropes, scaffolds or ladders and only occasional [sic] should climb stairs and ramps.  She should only occasionally balance, stoop, bend, kneel, crawl and crouch.  She is limited in grasping, feeling and handling for fine manipulation in the left hand to an occasional basis.  She should not have exposure to unprotected heights or moving machinery.

R. at 33.

The ALJ found Plaintiff unable to perform her past relevant work.  But considering her age, education, work experience, and RFC, the ALJ found that there are jobs that Plaintiff could perform that exist in significant numbers in the regional economy.

### STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial

evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to [his] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*,

8

362 F.3d 995, 995 (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations.  The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).  To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits.  20 C.F.R. § 404.1520(a)(4).  The steps are:

(1) Is the claimant engaged in substantial gainful activity?  If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2.

(2) Does the claimant have an impairment or combination of impairments that are severe?  If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3.

(3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4.

(4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5.

(5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(iv); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all relevant evidence of record. *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id.* at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Requesting reversal and remand, Plaintiff argues in her opening brief that: (a) the Commissioner erred in finding that she does not have an impairment or combination of impairments; and (b) the Commissioner erred in finding that she is not disabled because she is able to perform more than minimal functions in carrying out a job.[2] While in form, Plaintiff's opening brief asserts the arguments described above, those arguments are devoid of legal analysis and are only basic

---

[2] Representing herself in this appeal, the pro se Plaintiff did not identify any supportive legal precedent in her Opening Brief. The Commissioner, represented by legal counsel, followed pro se Plaintiff's lead, citing nary a statute, regulation, or judicial decision in the substance of his arguments. The Commissioner did refer to basic social security law in framing his arguments. The law cited within this Opinion and Order is referred to for the purpose of identifying the proper standards for the Court's decision, it is not cited for a factual or specific comparison to Plaintiff's contentions.

10

contentions asserted in cursory one sentence statements. The substance of Plaintiff's argument for reversal and remand is that the ALJ failed to adequately consider and analyze her treating and consulting physicians' opinions. Following brief analyses of issues (a) and (b), the Court will undertake an analysis of (c), whether the ALJ properly considered the opinions of Plaintiff's physicians.

Before beginning its analysis, the Court makes several additional observations regarding Plaintiff's framing of her issues. In her Opening Brief, Plaintiff argues that the "District Court" committed errors. Pl.'s Opening Br. at 2. The Court interprets her brief to argue that the Commissioner erred, rather than the District Court, because the position of the Commissioner is the only position Plaintiff substantively challenges in her arguments.

Also, in her Opening Brief, Plaintiff argues that the ALJ erred by finding that she did not suffer from an impairment. However, the ALJ found that Plaintiff suffered from several severe impairments. Thus, to give Plaintiff's argument meaning, the Court interprets her brief to assert that the Commissioner erred in finding that her impairments did not meet a listed impairment, as defined by the Social Security Act. The Court now analyzes Plaintiff's arguments separately.

### A. Listed impairment

Plaintiff first argues that the Commissioner erred in finding that she did not suffer from a listed impairment. In response, the Commissioner contends that the ALJ's decision is supported by substantial evidence. At Step Three, a plaintiff bears the burden to prove that her impairments meet the requirements of a listing. *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). An applicant must satisfy all of the criteria in a listing in order to receive an award of benefits at Step Three. *See id*. (citing *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993), *overruled on other*

11

*grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 2003); *Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir. 1991)).  In determining whether a claimant suffers from a listed impairment, the Seventh Circuit requires that the ALJ "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability."  *Pope*, 998 F.2d at 481 (citation omitted).  Remand may be necessary if an ALJ failed to explicitly refer to a relevant listing and went on to perform a perfunctory analysis of the claimant's limitations.  *See Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name *and* offer more than a perfunctory analysis of the listing") (emphasis added) (citations omitted); *Brindisi v. Barnhart*, 315 F.3d 783, 786-87 (7th Cir. 2003); *Scott*, 297 F.3d at 595-96.

Here, Plaintiff does not argue that she qualifies for a specific listed disability.  Instead, she submits a general argument that the ALJ erred by concluding that she did not meet a listed impairment and that the Commissioner erred by adopting that analysis.  In her decision, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, non-insulin dependent diabetes, hypertension, a left arm fracture, left sided carpal tunnel, low back pain, glaucoma, and eyesight in only one eye.  The ALJ concluded that the impairments did not meet an impairment listed in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526.  The ALJ gave the following explanation for her conclusion: "No medical source opines that the claimant has any impairment that individually or cumulatively meets or equals any listed impairment.  This finding is consistent with the opinion of the State Agency medical consultants and also adopts the opinion of the medical expert, Dr. Ezike."  R. at 33.

12

The burden to establish a listed impairment belongs to Plaintiff. Here, Plaintiff failed to satisfy her burden. Other than to allege that the ALJ was wrong, Plaintiff provided no support for her argument that she qualified for a listed impairment. The ALJ, on the other hand, provided a sufficiently transparent explanation of her consideration of whether Plaintiff suffered from a listed impairment. Taking into account all of Plaintiff's limitations, and based on the relevant provisions in the Regulations, the testimony of State Agency medical consultants, and the opinion of the ME, the ALJ concluded that Plaintiff did not suffer from a listed impairment. The Court deems this analysis sufficient and affirms the finding of the ALJ as to Plaintiff not qualifying for a listed impairment.

### B.  RFC finding

Plaintiff next argues that the Commissioner erred in supporting the finding of the ALJ that Plaintiff was not disabled and that she was able to perform more than minimal functions of employment. Plaintiff argues that the ALJ's conclusion is based solely on the opinion of the ME, an insufficient amount of support. This amounts to a challenge of the ALJ's RFC finding. The Commissioner responds by arguing that the ALJ's RFC finding is supported by substantial evidence.

RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *See* 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. *See* 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at Steps Four and Five of the sequential evaluation process. *See* SSR 96-8p. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.*

13

In her decision, the ALJ examined Plaintiff's limitations and symptoms. Considering symptoms, the ALJ evaluated: Plaintiff's daily activities; the location, duration, and intensity of Plaintiff's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication Plaintiff takes to alleviate her pain and symptoms; treatment, other than medication that Plaintiff receives for her pain and symptoms; and any measures other than treatment that Plaintiff uses to relieve pain or other symptoms. Her analysis led the ALJ to conclude that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. at 35.

The ALJ noted Plaintiff's left arm injury, which the ALJ found caused pain and was complicated by carpal tunnel, but based on the medical evidence, the ALJ found no evidence of deficits on Plaintiff's right side. The ALJ also acknowledged Plaintiff's blindness in her right eye, but noted that the condition had been present since 1993, and that Plaintiff had worked while blind in the right eye. The ALJ discussed Plaintiff's lack of credibility. The ALJ cited evidence that Plaintiff's only recent hospital visit, at the time the ALJ rendered her decision, was for complaints of high blood pressure. The ALJ also noted that Plaintiff had not recently undergone physical or occupational therapy. In addition, the ALJ noted that Plaintiff's claim that she could only lift or carry two pounds was discounted by numerous reports in the record. Ultimately, the ALJ "essentially adopted the opinion of [the ME], as he had the opportunity to review the entire medical record and listen to claimant's testimony." R. at 36. The ALJ concluded that Plaintiff maintained the RFC to:

> lift and carry 10-20 pounds occasionally and less than 10 pounds frequently. She can stand, walk and sit for six hours in a day. She should not climb ropes, scaffolds or

> ladders and only occasional [sic.] should climb stairs and ramps. She should only occasionally balance, stoop, bend, kneel, crawl and crouch. She is limited in grasping, feeling and handling for fine manipulation in the left hand to an occasional basis. She should not have exposure to unprotected heights or moving machinery.

R. at 33.

The Court finds that the ALJ's RFC analysis evaluated a great deal of evidence, including Plaintiff's medications, daily activities, and the reports of treating and consulting physicians. While the ALJ openly acknowledged that she essentially adopted the ME's findings, this reliance is in line with the ME's purpose under the Social Security Regulations. *See Manney v. Barnhart*, 320 F. Supp. 2d 681, 701 (N.D. Ill. 2004) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000)) (finding that Social Security procedure requires that the ALJ summon an ME "if there is not an adequate basis in the record for determining whether the claimant is disabled."). In addition to giving credence to the ME's findings, the ALJ also independently considered a variety of additional evidence. Based on the ALJ's thorough analysis, the Court finds that the RFC finding is supported by substantial evidence.

### C.  Analysis of physician opinions

Turning to the substance of Plaintiff's argument, she contends that the ALJ mistakenly relied solely on the opinion of the ME in reaching her conclusions, and in doing so wrongly disregarded the opinions of other physicians. The Commissioner contends that the ALJ's findings are supported by substantial evidence.

In making the decision as to whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [she] receive[s]." 20 C.F.R. § 416.927(b). Additionally, the ALJ will "evaluate every medical opinion [she] receive[s]." 20 C.F.R. § 416.927(d). In evaluating medical opinions, the ALJ should

generally give greater weight to treating physicians than non-examining physicians. *See* 20 C.F.R. § 416.927(d)(1). State Agency physicians are, however, "highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(i). Therefore, the ALJ must consider the findings of State Agency medical consultants. *See id*. The ALJ's explanation should also refer to significant evidence that would support the opposite conclusion so that the reviewing court may "trace the ALJ's path of reasoning." *Clifford*, 227 F.3d at 874.

Here, Plaintiff contends that the ALJ failed to mention the opinions of Drs. Patel, Ham, Ferguson, and Schwartz. Plaintiff's contentions that Drs. Patel and Ferguson were not mentioned is false. In her decision, the ALJ acknowledged that Dr. Patel did not note that Plaintiff suffered from pitting edema but did document wrist and elbow pain, and restricted motion. Consistent with these findings, the ALJ found that Plaintiff had limited ability to lift and carry, and set limitations on Plaintiff's ability to climb, crawl, and manipulate. Plaintiff suggests that Dr. Patel "continuously tells [her] that she cannot work and she is disabled." Pl.'s Opening Br. at 2. However, Plaintiff does not support her contention with a citation to medical evidence in the record and the Court's review of Dr. Patel's treatment records does not support Plaintiff's suggestion. Instead, on August 25, 2004, Dr. Patel noted that Plaintiff felt well, and on March 9, 2004, April 21, 2005, and September 29, 2005, Dr. Patel noted that Plaintiff felt fine. Plaintiff's other treatment records from her visits with Dr. Patel note a myriad of complaints from headaches to hot flashes, but no record contains a recommendation by Dr. Patel that Plaintiff not work.

In a related argument, Plaintiff contends that Dr. Patel should, presumably by request of the Commissioner or the ALJ, have been brought in to testify at the hearing. Represented by counsel at the hearing, Plaintiff had the opportunity to present her case, including through the use of

witnesses. Plaintiff availed herself of this opportunity, presenting the testimony of her husband. Plaintiff did not however present the testimony of Dr. Patel. Plaintiff cannot now fault the ALJ or the Commissioner for her own failure to elicit Dr. Patel's testimony.

In her decision, the ALJ also referred to treatment records from Plaintiff's visits to Dr. Ferguson. The ALJ did not refer to Dr. Ferguson by name, but did cite exhibit 1F, which is a seven page record of Plaintiff's visits to Dr. Ferguson's eye clinic. The ALJ summarized the records as providing that since 1993, Plaintiff can only see out of her left eye, and that Plaintiff's left eye vision is 20/40. Based on the records, the ALJ found that Plaintiff required safety precautions related to her vision and reduced fine detail and handling work.

With regard to Dr. Ham, a review of the treatment records from Plaintiff's visits, show that Dr. Ham performed hand and wrist surgery on Plaintiff on February 14, 2003, and ordered subsequent outpatient occupational therapy. In his report detailing the surgery, Dr. Ham provided a thorough description of the procedure but did not render any opinions as to Plaintiff's functional abilities or capability to return to work. Thus, the Court finds that the ALJ's failure to mention Dr. Ham does not preclude a finding that her opinion is supported by substantial evidence.

Finally, as to Dr. Schwartz, Plaintiff states that Dr. Schwartz is an independent doctor who recommended that Plaintiff be placed on permanent restrictions in order to control her pain. The Commissioner contends that there are no treatment notes or medical source statements signed by a Dr. Schwartz. Plaintiff does not provide any citation to records of treatment with Dr. Schwartz. Further, the Court's review of the record did not reveal any medical records produced by a Dr. Schwartz. Nevertheless, the ALJ's RFC did place Plaintiff on certain restrictions to reduce her pain.

17

Thus, the findings of the unknown and undocumented Dr. Schwartz, which Plaintiff contends should be accounted for, at least in part, were contemplated by the ALJ in her RFC finding.

The ALJ essentially adopted the ME's opinion but did not do so, as Plaintiff suggests, without first considering and accounting for the opinions of other physicians. The ALJ found the ME's opinion persuasive, according to her, because he had the opportunity to review the entire medical record and listen to Plaintiff's testimony at the hearing. The Court finds that the ALJ's analysis of Plaintiff's physicians is supported by substantial evidence.

### D. Fees and costs

Plaintiff also requests that the Court award her the fees and costs that she incurred in this matter. Because the Court finds the ALJ's decision to be supported by substantial evidence with regard to all issues raised by Plaintiff, Plaintiff is not a prevailing party, so she is not entitled to fees or costs. *See* 28 U.S.C. § 2412(d)(1)(A).

### CONCLUSION

The Court finds that the decision of the ALJ is supported by substantial evidence. Therefore, the Court **DENIES** the Plaintiff's Opening Brief [DE 15] and **AFFIRMS** the decision of the ALJ in all respects.

SO ORDERED this 14th day of April, 2008.

> s/ Paul R. Cherry
> MAGISTRATE JUDGE PAUL R. CHERRY
> UNITED STATES DISTRICT COURT

cc:    All counsel of record